PUBLIC CITIZEN, National Women's Health Network, et al., Appellants,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.

No. 81–1896.

United States Court of Appeals, District of Columbia Circuit.

Nov. 30, 1981.

Before MacKINNON, ROBB and EDWARDS, Circuit Judges.

Dissenting opinion filed by Circuit Judge HARRY T. EDWARDS.

## JUDGMENT

PER CURIAM.

This cause came on to be heard on the record on appeal from the United States District Court for the District of Columbia and was argued by counsel.

On September 12, 1980, after a six-year period of meetings and research, the Food and Drug Administration ("FDA") published final regulations requiring "patient package inserts" ("inserts") to be given out with ten widely used drugs, which are dis-

tributed only to patients on prescriptions by doctors. 45 Fed.Reg. 60754 (Sept. 12, 1980). The FDA has previously required inserts for five drugs and devices, and its authority to do so for estrogens has been upheld under the Food, Drug, and Cosmetic Act §§ 201, 502(a), 503(b)(2), 21 U.S.C.A. §§ 321, 352(a), 353(b)(2) (West 1972 & Cum. Supp. 1981). *Pharmaceutical Manufacturers Association v. FDA*, 634 F.2d 106 (3d Cir. 1980) (per curiam).

The regulation published on September 12 was not self-executing but provided that each specified drug would be required to be dispensed with inserts 180 days after a notice for that drug was published in the *Federal Register.* In the lame-duck period of the Carter administration the FDA published notices requiring "inserts" for five drugs. 45 Fed.Reg. 78514 (Nov. 25, 1980), and 46 Fed.Reg. 28, 160 (Jan. 2, 1981).

On February 20, 1981, the FDA announced to the "trade press" that it intended to stay implementation of the insert program, in particular the actual distribution of inserts for the five previously specified drugs. Secretary Schweiker issued a press release on April 23, and a notice appeared in the *Federal Register* on April 28, 46 Fed.Reg. 23739 (Apr. 28, 1981), formally stating that implementation of the program would be stayed. The *Federal Register* notice stated:

> Important questions continued to be raised regarding the cost, necessity, and utility of the FDA's patient package insert program. These questions merit further review before final implementation of any requirements. FDA also believes additional review of these requirements to be consistent with the spirit of the provisions of Executive Order 12291 (46 FR 13193, February 19, 1981).

The notice gave no explanation for the agency's failure to give notice to and solicit comments from the public, and it did not state any expiration date for the stay.

The instant suit was filed on April 8, 1981, alleging that such a stay is arbitrary and capricious, contrary to law, allegedly based on ex parte contracts, and not under-

taken in compliance with the Administrative Procedure Act, 5 U.S.C. § 553 (1976). Cross-motions for summary judgment were filed with the District Court, which, without hearing argument, granted summary judgment for defendants on July 31, 1981. This appeal followed.

On the entire record and proceedings herein it is hereby,

ORDERED and ADJUDGED, that the Secretary of the Department of Health and Human Services is hereby allowed until December 24, 1981, to determine whether to take no further action, or to proceed by notice and comment, or a hearing, or without notice and comment or hearing to revoke or revise the stay at issue. This Court will not take any action until after December 24, 1981.

EDWARDS, Circuit Judge, dissenting:

Government officials in the present case are guilty of flagrant—and continuing—conduct in total disregard of applicable law. I am therefore constrained to add this note of dissent.

In this case, the Food and Drug Administration (FDA) indefinitely stayed, without notice and comment, the effective dates of regulations requiring that patient package inserts (PPIs) be provided for certain prescription drugs with potentially serious side effects. The PPIs would have provided patients with written instructions on the proper use of these drugs and information on the risks associated with their use. The agency's indefinite stay of the regulations without notice and comment plainly violated the rulemaking requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 553 (1976).

A brief review of the history of the regulations demonstrates the unlawfulness of the Government's actions in this case. On September 12, 1980, the final PPI regulations were adopted by the FDA after approximately six years of careful study, including an extensive cost-benefit analysis. They are the product of a thorough rulemaking process in which affected industries

and professions, public interest groups and the general public participated. The final regulations, including a pilot program for applying the PPI requirements to ten specified prescription drugs, became effective on October 14, 1980. On November 25, 1980 and January 2, 1981, the FDA published final guidelines specifying the required text of the PPIs for five of the ten prescription drugs in the pilot program and set compliance dates of May 25, 1981 for three of the drugs and July 1, 1981 for the other two.

On February 20, 1981, without informing the public, the FDA informally notified affected industries through the "trade press" that it was going to stay the effective dates of the regulations applying the PPI requirements to the first five drugs in the pilot program. Over two months passed before the new Secretary of Health and Human Services formally announced, on April 23, 1981, that these PPI requirements had been stayed pending a reexamination of the PPI program. It was not until April 28, 1981 that the FDA finally published a notice in the Federal Register announcing the stay. The record in this case reveals that, with the possible exception of a meeting with a representative of the pharmaceutical industry in early February, 1981, the Government has never solicited comment on its suspension of the PPI regulations.

The Government nonetheless argues that it was not required to provide notice and an opportunity for comment because the FDA's action was merely a temporary "postponement" designed to maintain the status quo, not a "rule" subject to the rulemaking requirements of the APA. Alternatively, the Government urges that there was "good cause" under 5 U.S.C. § 553(b)(B) for suspending the regulations without notice and comment. Both arguments are foreclosed by this court's decision in *Council of the Southern Mountains, Inc. v. Donovan*, 653 F.2d 573, 580 n.28, 580–82 (D.C.Cir.1981) (per curiam). Certainly a decision to suspend indefinitely regulations that are the product of exhaustive study and comprehensive rulemaking, in order to allow wholesale reevaluation of a major regulatory program, cannot be viewed as a temporary measure for preserving the status quo. Indeed today, nine months after the first announcement of the stay, the Government proposes no specific action and gives no indication of when a decision on the unlawfully suspended regulations will be forthcoming. The advent of a new Administration cannot justify the Government's complete and continued disregard of the APA's rulemaking requirements.

In these circumstances, I believe that the case should not be held in abeyance for more than one week. The Government should be ordered to implement the suspended regulations or to give notice of, and an opportunity to comment on, any proposed changes in the regulations, including any change in their effective dates.